1
2
3
4
5
6
7                          UNITED STATES DISTRICT COURT

8                      FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10    VENCIL C. GREEN,                          No.  2:23-cv-02302-WBS-EFB (PC)

11                   Plaintiff,

12         v.                                    ORDER AND FINDINGS AND
                                                 RECOMMENDATIONS
13    D. STRIBLING,

14                   Defendant.

15

16         Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

17    U.S.C. § 1983.  The court previously screened the complaint pursuant to 28 U.S.C. § 1915A(a)

18    and determined that plaintiff alleged a potentially cognizable First Amendment retaliation claim

19    and Fourteenth Amendment due process claim against defendant, a correctional officer at Mule

20    Creek State Prison (MCSP).  ECF No. 1, 7.  Plaintiff and defendant have each moved for

21    summary judgment.  After completion of the briefing, ECF Nos. 16, 24, 25, and 26, plaintiff filed

22    an unauthorized sur-reply, ECF No. 27, which defendant moves to strike.  Plaintiff opposes that

23    motion.  ECF Nos. 29, 30.

24                                    The Complaint

25         Plaintiff alleges a series of interactions on May 16, 17, and 18, 2023, between himself and

26    defendant, who was the control booth officer in charge of opening plaintiff's cell door to allow

27    plaintiff's movement in and out of his cell.  Plaintiff claims that on May 16 he asked defendant to

28    allow him back into his cell after his shower, but defendant just ignored plaintiff and made

1

1  plaintiff wait a half hour before opening the door.

2          On the next morning, May 17, plaintiff again asked defendant to open his cell door upon

3  returning from the shower.  Defendant again ignored plaintiff.  After a half hour, plaintiff

4  approached the control booth and asked defendant why he had not opened the door.  Defendant

5  allegedly told plaintiff to "get the f**k out of my face, and just wait in front of your cell Green."

6  ECF No. 1 at 5-6.  Plaintiff threatened to lodge a grievance against defendant, and defendant

7  replied that he would "write you a 115,[1] and keep your a** in prison."  Plaintiff alleges he

8  returned to his cell and immediately initiated a grievance, log # 0401781 (the "1781 Grievance")

9  complaining of defendant's conduct.  ECF No. 1 at 6.

10          On the morning of May 18, plaintiff was inside his cell and placed a sign in his window

11  indicating he wished to be allowed out to go to the exercise yard.  Defendant opened plaintiff's

12  door after two floor officers (Bauer and Lactaeoen) called defendant's attention to plaintiff's sign

13  by shining their flashlights on it.  Plaintiff alleges he was informed by other inmates in the yard

14  that defendant had written a rules violation report (referred to herein as the "May 17 Report")[2]

15  against plaintiff.  Plaintiff returned from the yard, approached the control booth, and asked

16  defendant about this.  Defendant confirmed he had initiated the May 17 Report, and he reportedly

17  stated that 1) he was a "best friend" of Commissioner Chappell of the California Board of Parole

18  Hearings, 2) he knew a 115 or a 128 rules violation report would ruin plaintiff's chances for

19  parole, and 3) if plaintiff wanted to "play that game" he would "write you a 115 again today."

20  ECF No. 1 at 7.

21          Plaintiff alleges he received a copy of the May 17 Report on June 1, 2023.  He claims that

22  the report was "falsified" insofar as it described disrespectful conduct by plaintiff.  Plaintiff

23  alleges that Bauer and Lactaoen both later said they had observed a brief conversation between

---

25  [1]  As discussed *infra*, a "115" is a type of disciplinary report.  The distinctions between a 115 rules violation report and a 128 counseling-only chrono is discussed *infra*.

26  [2]  As discussed *infra*, there are contested factual issues in this case regarding whether or not defendant threatened plaintiff with a "115" rules violation report, and whether or not the report authored by defendant has the same consequences attendant to a rules violation report.  Therefore, the Court uses the term "May 17 Report" in referring to defendant's report.

1    plaintiff and defendant, but they had not seen plaintiff yelling persistently with volatile and

2    aggressive demeanor.[3]

3        Plaintiff contends that the false and/or retaliatory May 17 Report will adversely affect his

4    chances of parole.  He alleges that in October 2020 the Parole Board had "mandated" that he get

5    no more 115 rules violations or 128 counseling chronos, among other conditions to gain his

6    parole release.  ECF No. 1 at 9.  According to plaintiff's complaint, the May 17 Report will cause

7    his risk assessment to show him as a high threat risk with ineffective programming, negating the

8    merits of his educational courses and other activities.

9                            Request For Judicial Notice

10       Plaintiff has requested the court to take judicial notice of three lawsuits he has filed in this

11   court.  ECF No. 25-2 at 1-2.  Plaintiff claims that these lawsuits "have direct relevancy to this

12   action, and will exemplify Mule Creek State Prison's state actors history of falsifying rules

13   violations against Plaintiff, for his protected conduct."  ECF No. 25-2 at 1.  The court has

14   reviewed the relevant dockets,[4] and has determined that:

15       1) The lawsuit docketed at *Green v. Link*, 2:19-cv-1324-JAM-KJN was filed on July 16,

16          2019 and was dismissed by stipulation of the parties on May 25, 2021.

17       2) The lawsuit docketed at *Green v. Pasioles*, 2:20-cv-00534-JAM-JDP was filed on

18          March 9, 2020 and was dismissed by stipulation of the parties on April 22, 2021.

19       3) The lawsuit docketed at *Green v. Chamberlain*, 2:19-cv-00109-WBS-DMC was filed

20          on January 16, 2019 and was dismissed by stipulation of the parties on May 6, 2021.

21       Rule 201(a) & (b) of the Federal Rules of Evidence provide that the court may take

22   judicial notice of adjudicative facts that are not subject to reasonable dispute because those facts

23   are generally known within the trial court's jurisdiction or they can be accurately and readily

24   determined from sources whose accuracy cannot reasonably be questioned.  Rule 201(c)(2)

25

26       [3]  Bauer and Lactaoen allegedly made that statement on September 21, 2023.

27       [4]  Plaintiff's citations for two of these cases contain erroneous docket numbers.  To the
     best of its ability, the court has identified the cases that plaintiff is referencing, with corrected
28   docket numbers.

                                        3

1    provides that the court "must take judicial notice if a party requests it and the court is supplied

2    with the necessary information."

3          The court takes judicial notice that plaintiff filed the three lawsuits and that all three were

4    dismissed by stipulation.  But the request to take judicial notice that the suits are "relevant" or

5    that they "exemplify" any "history of falsifying rules violations against Plaintiff" is denied.

6    Judicial notice may not be used to supplement or further amend the allegations of a complaint.

7    *Gerritsen v. Warner Bros. Entertainment, Inc*., 112 F. Supp. 3d 1011, 1033 n.93 (C.D. Cal. 2015).

8    Further, all three lawsuits involve claims that arose years before the events of May 2023

9    complained of in this lawsuit.  Moreover, defendant Stribling was not a party in any of the three

10    lawsuits.  The mere filing and/or settlement of the three lawsuits has little if any relevance to

11    plaintiff's claims against defendant here.  Finally, all three lawsuits were dismissed before the

12    court entered any order resolving any disputed facts or adjudicating any claims.  There was no

13    judicial finding in any of these three cases that officials at MCSP falsify rules violations against

14    plaintiff, whether historically, generally, or specifically.  The proposed adjudicative fact of a

15    "history of falsifying rules violations against Plaintiff" is not shown by the filing and/or

16    settlement of these three lawsuits, and it is not a judicially noticeable fact.  Accordingly, the court

17    takes a limited judicial notice of the facts that plaintiff filed the three lawsuits and that all three

18    were dismissed by stipulation of the parties before adjudication of their merits.  *See MGIC Indem.*

19    *Co. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986) (a court may take judicial notice of court

20    records).

21                                    The May 17 Report

22          The content of the May 17 Report authored by defendant was that:

23    On May 17th 2023 at approximately 0900hrs, I [was] assigned as the building 10
      control booth officer, second watch, Inmate Green (C61557 10-118L) approached
24    on the left side of the booth facing outward toward the cells and stated, "I told you
      to open my door".  At the time I was on the phone and I looked down from the
25    booth and Green had aggressive demeanor.  Inmate Green continued to try and get
      my attention by stating, "You're not even doing your job".  I finished my phone
26    call and told Green his door was already open, however Green continued his
      verbal assault on me.  He continued yelling at me that, "He demands respect", "He
27    been down a long time".  I ordered him to, "Return to his cell and secure the door
      and that this attitude was not necessary to take it in".  He continued yelling and
28    stated, "I can act this way I'm the convict you're the police you can't even do your

                                        4

1                    job".  During the entirety of the altercation Green was yelling for everyone in the
dayroom to hear.  I told Green once again, "his door was open", however Green
2                    persisted in yelling at me, he eventually went to his cell.  Inmate Green has done
this behavior several times before.  Due to his past behavior I advised inmate
3                    Green that his disrespect will not be tolerated and he was going to receive a CDCR
115.

4

5       ECF No. 16-1 at 35; ECF No. 24-13 at 2.

6               The parties agree that the May 17 Report was classified as a counseling-only chrono,

7 known as a "128," rather than an administrative or serious rules violation report, known as a

8 "115."  The decision to classify the May 17 Report as a 128 counseling-only chrono was made by

9 a supervisory lieutenant (Cochran).  ECF No. 24-12 at 4 ¶ 12; ECF No. 24-6 at 4 ¶¶ 6-9; *see* 15

10 Cal. Code Regs. § 3313(a) (a form CDCR-115 is used to document administrative or serious rules

11 violation reports); *see also, e.g., Barton v. Hartley*, No. 1:10-cv-00472-OWW-DLB (HC), 2010

12 WL 3069331, at *6 n.3 (E.D. Cal. Aug. 3, 2010) ("A CDC Form 115 documents misconduct

13 believed to be a violation of the law that is not minor in nature while a CDC Form 128 documents

14 incidents of minor misconduct." (citation omitted)); *Clement v. Stinson*, No. 2:19-cv-00789-

15 MCE-JDP (PC), 2022 WL 584210, at *1 n.1 (E.D. Cal. Feb. 25, 2022) (Form 128-B is used to

16 report information such as an inmate's behavior and general attitude).

17            <u>The Parties' Evidentiary Submissions on Their Cross-Motions</u>

18              In support of their motions, the parties have submitted:

19       1) records from plaintiff's two grievances:

20              a)  the grievance plaintiff initiated on May 17, 2023 and that was assigned the

21              tracking number 0401781 (the "1781 Grievance"), ECF No. 16-1 at 17-18;

22              b)  a grievance plaintiff initiated on May 18, 2023 and that was assigned the

23              tracking number 0401244 (the "1244 Grievance"), *id.* at 19-21;[5]

24       2) the full transcripts of the depositions of plaintiff and his four inmate witnesses:

25       Fletcher, Howard, Motley, and Spivey, ECF Nos. 24-2, 24-3, 24-4, and 25-2 at 15-250;[6]

---

26            [5]  The 1244 Grievance was stamped received by prison officials on May 19, 2023.  ECF
27 No. 16-1 at 19.  It was identified as an allegation of staff misconduct and referred outside the
grievance process for investigation.  *Id.* at 21.

28            [6]  Plaintiff has submitted the virtually identical declarations of his four inmate witnesses,

3) defendant's declaration, ECF No. 24-12;

4) declarations of the following witnesses:

      a) the declaration of B. Bauer, one of the two floor officers present on May 17, ECF No. 24-7;

      b) the declaration of B. Cochran, a correctional lieutenant responsible for reviewing RVRs, ECF No. 24-6;

      c) the declaration of litigation coordinator D. Santos, ECF No. 24-8;

5) the parties' answers to discovery requests, ECF No 16-1 at 23-33; ECF No. 24-5; ECF No. 25-2 at 7-13; and

6) the Parole Board's recommendations to plaintiff following their denial of parole in 2020, ECF No. 25-2 at 4-5.

    <u>Bauer's Declaration</u>.  Plaintiff's complaint identifies Bauer as a floor officer who was present on May 17, 2023, and his motion for summary judgment states that plaintiff intends to subpoena Bauer's testimony.  ECF No. 1 at 8; ECF No. 16 at 6.  Bauer has instead provided a declaration in support of defendant's motion.  Plaintiff objects to defendant's reliance on Bauer's declaration, arguing that Bauer was not named in defendant's Rule 26(a)(1) initial disclosures and plaintiff was thereby denied the opportunity to depose Bauer.  ECF No. 25-1.  Defendant has not responded to plaintiff's objection and the court accepts as true plaintiff's assertion that defendant did not make a Rule 26 disclosure identifying Bauer as a witness.

    Whether to exclude testimony for failure to make a Rule 26 disclosure of a witness, requires consideration of : "(1) whether the alleged defects in the disclosures were harmless and (2) whether the defects involved willfulness, fault, or bad faith, as required by *R&R Sails, Inc. v. Ins. Co. of Penn*., 673 F.3d 1240 (9th Cir. 2012)."  *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185,

---

ECF No. 16-1 at 4-13.  Fletcher and Howard both testified in their deposition that they had written their own declarations and given them to somebody to type before signing.  ECF No. 24-3 at 10-14; ECF No. 24-4 at 12-13.  Motley testified he did not write his declaration, but that it does state what he witnessed, and also that plaintiff gave the declaration to him.  ECF No. 25-2 at 54 (Tr.11 ll.4-8 & Tr.12 ll.3-8).  The parties have submitted the full deposition transcripts of all four witnesses, which are more detailed and specific than their declarations.  The court has considered both their deposition transcripts and their declarations.

1188 (9th Cir. 2022). Plaintiff has not shown how he was harmed by the failure to list Bauer in

the Rule 26 initial disclosure. Bauer was known to plaintiff from the outset. Plaintiff could have

deposed or subpoenaed Bauer regardless of whether defendant name him in a Rule 26 disclosure.

Similarly, plaintiff cannot show willfulness, fault, or bad faith. He makes no showing that

defendant concealed the possibility that Bauer might be a fact witness. For these reasons, the

court overrules plaintiff's objection to Bauer's declaration.

Role of the Control Booth Officer. Defendant declares, and plaintiff does not dispute, that

as the control booth officer he supervised the movements of prisoners in and out of their cells.

Plaintiff's testimony is that inmates leave and re-enter their cells as many as five times each day.

ECF No. 24-2 at 41-42, 45. Inmates are released one at a time and the process is tedious. *Id*. at

49 ll.13-17. It takes about a half-hour to release all the inmates. *Id*. at 49 ll. 9-10. Returning

inmates wait in front of their cells for the control booth officer to open the door. *Id*. at 52 ll.2-4.

Fletcher testifies that cell doors are individually opened and the entire process of allowing

inmates back into their cells usually takes at least 15 minutes. ECF No. 24-3 at 36 ll.17-22. It is

not unusual for inmates to wait to be allowed back into their cells. ECF No. 24-3 at 46 l.24 to 47

l.5. Spivey agrees the process can take 5 to 20 minutes, and sometimes more. ECF No. 25-2 at

24 (Tr.32 ll.19-21).

The Events of May 16, 2023. Plaintiff testifies that, when he returned from his morning

shower on May 16, he waited about a half-hour for defendant to open the door. ECF No. 24-2 at

55 ll.23-25. Neither plaintiff nor defendant claim any personal interaction between them on May

16.[7] *Id*. at 69 ll.4-6; ECF No. 24-12.

The Events of May 17, 2023. Defendant declares that plaintiff approached his control

booth on May 17 and stated, "I told you to open my door." ECF No. 24-12 at 4. Defendant was

on a work-related phone call and told plaintiff to be patient, but plaintiff made loud and

disrespectful comments that defendant was not doing his job. Defendant unlocked plaintiff's cell

---

[7] Spivey is the only witness who testifies to an interaction on May 16. ECF No. 25-2 at
20-23. His account of May 16 is similar to his account of the events of May 17, and it appears he
may have jumbled together the separate days' happenings. *Id*. at 23-26; *see also id*. at 26 (Tr.39
ll.18-21).

door and told him it was open, but plaintiff continued yelling that he "demands respect" and he had been "down a long time."  Defendant twice again instructed plaintiff to return to his cell and advised him against a hostile attitude, but plaintiff continued to yell, and he stated that "I can act this way I'm the convict you're the police you can't even do your job."  Bauer was nearby and witnessed the interaction.  ECF No. 24-2 at 81 ll.1-6.  Bauer's declaration generally supports defendant's account.  ECF No. 24-7 at 2 ¶¶ 4-5.  Bauer declares that plaintiff was angry, argumentative, and defensive, and that he continued arguing after defendant told him his door was open.  Defendant attempted to deescalate this behavior.  Defendant and Bauer both declare they did not hear plaintiff threaten to lodge a grievance, and defendant declares that he first learned of plaintiff's grievance weeks after the incident.  ECF No. 24-12 at 4-5 ¶ 13; ECF No. 24-7 at 2 ¶ 5.  Bauer additionally declares he did not hear any mention of parole.

Plaintiff agrees he approached the control booth, but, in his version, he was polite and respectful while defendant cursed and threatened plaintiff with a disciplinary write-up.  Plaintiff admits asking why defendant "refused" to open his cell door and that he made the comments "I been down a long time," and "I demand respect," but he denies yelling, screaming, demanding, verbally assaulting defendant, or using profanity.  ECF No. 24-2 at 71 ll.18-19; *id*. at 72 ll.9-19; *id*. at 73 ll.19-20; *id*. at 75 l.13; *but see id*. at 74 ll.11-15 (plaintiff seems to contradict himself regarding his demand for respect).

All four of the inmate witnesses agree that, on May 17, a number of inmates were waiting for their doors to be opened.  ECF No. 24-3 at 30 ll.8-11, *id*. at 31 ll.24-25 (Fletcher); ECF No. 24-4 at 34 ll.9-18 (Howard); ECF No. 25-2 at 25 (Tr.34 ll.20-24) (Spivey); ECF No. 25-2 at 61 (Tr.41 ll.13-16) (Motley).  Howard had not yet gone out and he had signaled he wished to be let out of his cell.  ECF No. 24-4 at 32-33.  Fletcher, along with plaintiff, had already been released to the exercise yard and they returned together and were waiting to be allowed back into their cells.  ECF No. 24-3 at 28 l.18 to 29 l.13.  Spivey was returning from breakfast.  ECF No. 25-2 at 24 (Tr.30 ll.3-5).  Inmates, including Howard, were yelling for defendant to let them into or out of their cells.  ECF No. 24-3 at 30 ll.10-11 (Fletcher); ECF No. 24-4 at 33 ll.5-18; *id*. at 34 ll.9-18 (Howard).  Fletcher testifies that defendant was on the phone, but Howard testifies defendant was

1    not on the phone although he "usually is." ECF No. 24-3 at 26 l.24 to 27 l.2; ECF No. 24-4 at 41

2    ll.23-25.

3          As for the interaction between plaintiff and defendant at the control booth, Spivey heard

4    plaintiff ask why defendant refused to let him into his cell. ECF No. 24-3 at 25 (Tr.37 ll.7-8).

5    Spivey and Fletcher both testify that defendant told plaintiff to "shut the f**k up," or to "get the

6    f**k out of my face," and to wait in front of his cell. ECF No. 24-3 at 30 ll.18-19; ECF No. 25-2

7    at 25 (Tr.37 ll.11-12). Three of plaintiff's witnesses testify they heard plaintiff tell defendant he

8    would "write you up." ECF No. 24-3 at 32 ll.4-6 (Fletcher); ECF No. 25-2 at 25 (Tr.37 ll.15-17)

9    (Spivey); ECF No. 24-4 at 48 ll.4-5 (Howard).

10         Three of plaintiff's witnesses heard defendant answer in turn that he would write up

11   plaintiff. ECF No. 24-4 at 48 ll. 4-5 (Howard); ECF No. 25-2 at 26 (Tr.38 ll.13-14 (Spivey)); *id.*

12   at 60 (Tr.36 l.20) (Motley)). Fletcher did not hear defendant make any response, although

13   Fletcher perceived that both plaintiff and defendant were "pissed off." ECF No. 24-3 at 35 ll.3-4.

14   Two of the other inmates also testify that the exchange was heated to some degree. Howard

15   perceived that plaintiff was frustrated, defendant was irritated and tried to waive plaintiff off, and

16   an argument resulted.[8] ECF No. 24-4 at 44-45. Motley describes an exchange of words; that

17   plaintiff was annoyed and defendant was disrespectful. ECF No. 25-2 at 60 (Tr.36 l.24 to Tr.37

18   l.1); *id.* at 61 (Tr.39 at 9-11, 21).

19         The May 17 Report. Defendant perceived a risk that other nearby inmates who had

20   stopped to watch the interaction would be incited to aggressive behavior. According to his

21   declaration, defendant prepared the May 17 Report to discourage plaintiff from hostile conduct

22   toward staff. ECF No. 24-12 at 4-5 ¶ 13.

23         Defendant and Cochran both declare that the May 17 Report was sent to Cochran for

24   classification within the three-tiered structure of counseling-only rules violation, administrative

25   rules violation, or serious rules violation. Cochran classified it as a counseling-only chrono on

26   _____

27         [8] Howard is the only inmate who testified that defendant may have referred to a parole
     board commissioner on May 17, by conveying a vaguely-described message to plaintiff regarding
     his "boy" on the board. ECF No. 24-4 at 48-49.

28

9

May 24, 2023.  ECF No. 24-6 at 4 ¶ 9; ECF No. 24-13 at 3 (Cochran); ECF No. 24-8 at 3 ¶ 5 (Santos).[9]  This meant that the May 17 Report was placed in plaintiff's file, but plaintiff did not lose any good-time credits or privileges, and there was no further process such as a disciplinary hearing.  ECF No. 24-6 at 4 ¶ 9; *see also* 24-2 at 104 ll.2-16; ECF No. 24-8 at 3 ¶ 5.  A copy of the counseling-only chrono was served on plaintiff on May 24, 2023.  ECF No. 24-13 at 3; *see also* ECF No. 24-2 at 103 ll.5-18.

The 1781 Grievance.  Plaintiff testifies that he wrote the 1781 Grievance upon his return to his cell the same day, and plaintiff's signature on the 1781 Grievance is dated May 17, 2023.  ECF No. 24-11 at 3.  The 1781 Grievance complains that defendant had ignored plaintiff's request to return to cell on May 16 and May 17 and was disrespectful.  The 1781 Grievance gives plaintiff's account that he had told defendant he intended to file a grievance and defendant replied stating "well then I'll write you a 115 and keep you in prison."  *Id.*  The 1781 Grievance was stamped received by prison authorities on May 22, 2023.  *Id.* at 2.  Defendant declares that he first learned of the grievance weeks after the incident.  ECF No. 24-12 at 5 ¶ 14.  Plaintiff does not appear to dispute this.

The Events of May 18, 2023.  The parties agree that plaintiff again approached defendant on May 18, after returning from yard exercise.  Plaintiff testifies that an unidentified inmate had informed plaintiff that defendant had made a rules violation report of the previous day's interaction.  ECF No. 24-2 at 88 ll.18-21.

The parties again have different versions of their interaction.  According to defendant, they discussed the May 17 Report, but he denies threatening plaintiff or telling plaintiff that he was a friend of a parole board commissioner or knew that a rules violation report would ruin plaintiff's chances for parole.  ECF No. 24-12 at 5 ¶ 14.  Plaintiff's account is that defendant said: "'Green, Mr. Chapato [sic] on the parole board is my best friend.  So I know [] any 115 or 128 will ruin your chance for parole, so if you want to play that game, I'll write you another 115 again today.'"  ECF No. 24-2 at 89 ll.10-14; *see also id.* at 92 ll.18-22; *id.* at 94 ll.1-2.  Plaintiff left

---

[9]  Litigation coordinator Santos also declares that Cochran classified the May 17 Report as counseling-only, with no loss of good-conduct credits or privileges, or any other disciplinary penalty.  ECF No. 24-8.

1    "and filed a [second] grievance on him" – presumably, this was the 1244 Grievance.  *Id*. at 89

2    ll.15-16.

3          All four of plaintiff's witnesses heard some version of a reference to the parole board

4    commissioner during the May 18 discussion.  Fletcher observed that plaintiff and defendant "had

5    words."  ECF No. 24-3 at 38 ll.16-17.  Plaintiff asked about the previous day's write up, and

6    defendant told plaintiff that defendant knew someone on the parole board "that would mess up

7    [plaintiff's] chances … of going home."  *Id*. at 38 ll.17-21.  Plaintiff went to his cell, and a couple

8    of minutes later defendant began opening the cell doors for the inmates to enter.  *Id*. at 43 ll.15-

9    18.  Defendant did not exhibit anger.  *Id*. at 43 ll.6-11.

10         Howard had been in the exercise yard that morning.  He saw plaintiff and defendant

11   talking when he returned indoors at about 9:00 a.m., ECF No. 24-4 at 59 ll.17-20, and heard

12   "something about – like, he was going to falsify some records or falsify a 115 on you, or

13   something like that."  *Id*. at 61 ll. 4-6.  Howard heard a name that may have been "Shamell,

14   Chappell."  *Id*. at 66 l.22.

15         Spivey heard plaintiff ask defendant "why is he falsifying" a 115, and defendant

16   mentioned "he is friends with the commissioner."  ECF No. 25-2 at 27 (Tr.45 ll.14-19).  Motley

17   also heard mention of "a 115" and commissioner Chappell.  *Id*. at 63 (Tr.49 ll.6-7); *id*. at 64

18   (Tr.52 l.20).

19         Plaintiff's 2025 Parole Board Hearing.  Plaintiff has had six parole hearings between 2003

20   and 2020.  ECF No. 24-2 at 110 ll.20-22.  He testifies that the parole board asks about write-ups.

21   *Id*. at 122 ll.21-23.  Plaintiff was last denied parole in 2020 because of rules violation reports he

22   had at that time, three of which he maintains were falsified.  *Id*. at 123-129.  The parole board

23   advised plaintiff to stay free of disciplinary actions.  ECF No. 25-2 at 4; ECF No. 24-2 at 131 ll.2-

24   4.  Plaintiff maintains that any write-up is harmful to his parole prospects.  ECF No. 24-2 at 135-

25   137.

26         Plaintiff argued he would be denied parole at his 2025 hearing because of the May 17

27   Report canceling out his other "laudatory chronos."  ECF No. 16 at 7; *see* ECF No. 24-2 at 20

28   ll.6-7.  The court takes judicial notice that plaintiff's parole hearing was conducted on August 26,

11

1    2025.[10]  *See* https://ciris.mt.cdcr.ca.gov/details?cdcrNumber=C61557.  According to the parole

2    suitability hearing results published on the website of the California Department of Corrections

3    and Rehabilitation, plaintiff was denied parole.  *Id*.  The reasons for the denial are not stated on

4    the website.[11]  *Id*.

5                              <u>Summary Judgment Standard Under Rule 56</u>

6            Summary judgment is appropriate when the moving party "shows that there is no genuine

7    dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

8    Civ. P. 56(a).

9            Under summary judgment practice, the moving party "initially bears the burden of

10   proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d

11   376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving

12   party may accomplish this by "citing to particular parts of materials in the record, including

13   depositions, documents, electronically stored information, affidavits or declarations, stipulations

14   (including those made for purposes of the motion only), admissions, interrogatory answers, or

15   other materials" or by showing that such materials "do not establish the absence or presence of a

16   genuine dispute, or that the adverse party cannot produce admissible evidence to support the

17   fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden of proof at

18   trial, "the moving party need only prove that there is an absence of evidence to support the

19   nonmoving party's case."  *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325.); *see*

20   *also* Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after adequate

21   time for discovery and upon motion, against a party who fails to make a showing sufficient to

22   establish the existence of an element essential to that party's case, and on which that party will

23   bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 322.  "[A] complete failure of proof

24   concerning an essential element of the nonmoving party's case necessarily renders all other facts

25   _____

26           [10]  A court may take judicial notice of the records and reports of administrative bodies.
     *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012).

27           [11]  Plaintiff has filed a supplemental declaration in which he asserts that the May 17
     Report was a "contributing factor" to the denial.  ECF No. 33.  His assertion will be addressed

28   *infra*.

                                                      12

1  immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as

2  whatever is before the district court demonstrates that the standard for entry of summary

3  judgment, . . ., is satisfied." *Id.* at 323.

4      If the moving party meets its initial responsibility, the burden then shifts to the opposing

5  party to establish that a genuine issue as to a material fact exists. *See Matsushita Elec. Indus. Co.*

6  *v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this

7  factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings

8  but is required to tender evidence of specific facts in the form of affidavits, and/or admissible

9  discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P.

10  56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in

11  contention is material, i.e., a fact that might affect the outcome of the suit under the governing

12  law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v.*

13  *Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

14  genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

15  party, *see Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987), *overruled on*

16  *other grounds as stated in Flood v. Miller*, 35 F. App'x 701, 703 n.3 (9th Cir. 2002).

17      In the endeavor to establish the existence of a factual dispute, the opposing party need not

18  establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

19  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

20  trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce

21  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

22  *Matsushita*, 475 U.S. at 587 (citations omitted).

23      "In evaluating the evidence to determine whether there is a genuine issue of fact," the

24  court draws "all reasonable inferences supported by the evidence in favor of the non-moving

25  party." *Walls v. Central Costa County Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the

26  opposing party's obligation to produce a factual predicate from which the inference may be

27  drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

28  *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing

1    party "must do more than simply show that there is some metaphysical doubt as to the material

2    facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

3    nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation

4    omitted).

5           On June 17, 2024, the court advised plaintiff of the requirements for opposing a motion

6    pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154 F.3d 952,

7    957 (9th Cir. 1998) (*en banc*), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*,

8    849 F.2d 409 (9th Cir. 1988).

9                                                    <u>Analysis</u>

10   <u>First Amendment Retaliation Claim</u>

11          To state a claim for retaliation in violation of the First Amendment, a prisoner must allege

12   facts showing five elements: (1) that a state actor took some adverse action against him (2)

13   because of (3) his protected conduct, (4) that such action chilled his exercise of his First

14   Amendment rights, and (5) the action did not advance a legitimate correctional goal.  *Rhodes v.*

15   *Robinson*, 408 F.3d 559, 567-568 (9th Cir. 2005).  The plaintiff need not allege that his speech

16   was actually inhibited or suppressed, but merely that the defendant's conduct was such as would

17   chill or silence a person of ordinary firmness from future First Amendment activities.  *Id*. at 568-

18   569.  Conduct protected by the First Amendment includes communications that are "part of the

19   grievance process."  *Brodheim v. Cry*, 584 F.3d 1262, 1271 n.4 (9th Cir. 2009).

20          The protected conduct in this case is plaintiff's (disputed) statement on May 17 that he

21   intended to file a grievance, rather than his lodging of the 1781 Grievance itself.  *See Entler v.*

22   *Gregoire*, 872 F.3d 1031, 1039-1043 (9th Cir. 2017) (an inmate's threat to file suit is protected

23   conduct); *Gleason v. Placencia*, No. 1:19-cv-00539-LJO-EPG (PC), 2020 WL 104693, at *6

24   (E.D. Cal. Jan. 9, 2020) (a threat to file a grievance is implicitly also a threat to sue, which is

25   protected conduct), *report and recommendation adopted in full*, 2020 WL 3497001 (June 29,

26   2020); *Whatley v. Valdovinos*, No. 18cv2761-CAB-BGS, 2020 WL 4893693 at *2 (S.D. Cal.

27   Aug. 20, 2020) ("courts in this Circuit have repeatedly found protected conduct where a plaintiff

28   makes a verbal threat to file a suit or grievance or even request a grievance form" (citations

                                                        14

1    omitted)).  There is no evidence that defendant knew whether plaintiff had actually lodged a

2    grievance before defendant initiated the May 17 Report, at about 9:31 a.m. on May 17, 2023.  *See*

3    ECF No. 24-13 at 3.  Rather, the disputed evidence is merely that plaintiff made a verbal threat to

4    file a grievance shortly before defendant entered the May 17 Report.[12]

5            The alleged adverse action in this case is the May 17 Report.  Defendant relies heavily on

6    his argument that the May 17 Report's classification as a counseling-only chrono means that it is

7    not punitive and is "the lowest form of documentation within CDCR's graduated system of

8    inmate corrective action and does not result in any disciplinary penalties such as the loss of good-

9    time credits or privileges."  ECF No. 26 at 3.  "Whether issuing a counseling chrono is an

10   'adverse action' is not a settled proposition."  *O'Brien v. Diaz*, No. 1:21-cv-0856-JLT-SAB (PC),

11   2023 WL 199238, at *11 (E.D. Cal. Jan. 17, 2023) (comparing cases); *see also Taylor v. Ingram*,

12   No. 2:21-01042 TLN SCR P, 2025 WL 1411550, at *8-9 (E.D. Cal. May 15, 2025) (granting

13   summary judgment on First Amendment retaliation claim because 128A counseling chrono was

14   purely informational and there was no evidence it contributed to housing reassignment or

15   adversely affected parole eligibility).[13]  The classification of the May 17 Report as a counseling-

16   only chrono is not relevant for purposes of plaintiff's First Amendment claim in this case,

17   however, because the decision to classify the May 17 Report as a counseling-only chrono was

18   _____

19   [12]  Disputed statements that may have been made during the parties' interaction the
     following day (May 18, 2023) add nothing to analysis of the First Amendment claim.  Both
20   parties had already made their respective reports.  Defendant did not file another report, but
     plaintiff did file another grievance on May 18.  Plaintiff maintains that for the first time on May
21   18, defendant alluded to his alleged "friendship" with a parole board commissioner, but defendant
     denies both the friendship and the allusion.  In any event, no further retaliatory acts or evidence of
22   retaliatory motive is alleged or shown.  *See Koons v. Smith*, No. CV 23-00873 PHX MTL (CDB),
     2024 WL 3718421, at *8 (D. Ariz. May 15, 2024) ("Vague verbal harassment or veiled threats
23   are not adverse actions cognizable in a § 1983 action." (citations omitted)).
            Plaintiff's allegations of waiting a half hour for defendant to open his door on May 16 and
24   May 17 also do not show evidence of retaliatory motive in support of plaintiff's First Amendment
     claim.  Plaintiff's own testimony, and that of his witnesses, is that such wait times are not
25   unusual.  *See* ECF No. 24-2 at 51 ll.9-10 (plaintiff); ECF No. 24-3 at 36 ll.17-22; *id*. at 46 l.23 to
     47 l.5 (Fletcher); ECF No. 25-2 at 21 (Tr.19-20) (Spivey).  Also, Fletcher testified to a much
26   shorter wait time on May 17.  ECF No. 24-3 at 29 ll.10-11 (plaintiff approached the control booth
     about five minutes after the two of them returned together from the exercise yard).

27   [13]  The 128A counseling chrono in *Taylor* was apparently designated as such from the
     outset by the reporting officer; there was no issue as to its classification and intended effects.
28   2025 WL 1411550, at *3.

1    made by Cochran after defendant submitted it.  Defendant apparently wrote his May 17 Report

2    without knowing whether it would ultimately be classified as either a 115 rules violation report or

3    a 128 counseling-only chrono.  Also, the record is clear that defendant specifically stated he

4    would submit a "115."  *See* ECF No. 24-13 at 2 (the May 17 Report, stating that defendant

5    "advised inmate Green that his disrespect will not be tolerated and he was going to receive a

6    CDCR 115"); ECF No. 24-2 at 80 (plaintiff's deposition testimony ("well then, I'm going to write

7    you a 115"); *id*. at 72 ll.1-2; ECF No. 24-4 at 48 ll.5-6 (Howard); ECF No. 25-2 at 26 (Tr.38 at

8    ll.13-14) (Spivey)).

9         The "because of" element that links the adverse action to the protected conduct may be

10    shown by circumstantial evidence such as proximity in time and false or pretextual reasons for the

11    adverse action.  *Brodheim*, 584 F.3d at 1271.  But "mere speculation that defendants acted out of

12    retaliation is not sufficient."  *Wood v. Yordy*, 753 F.3d 899, 903 (9th Cir. 2014) (citations

13    omitted).

14         Drawing all reasonable inferences in favor of the party opposing summary judgment, it is

15    not possible to grant summary judgment to either party based on the first three elements of a

16    retaliation claim.  The conflicting evidence demonstrates material disputes as to: (1) whether or

17    not plaintiff threatened to file a grievance (defendant and Bauer say no; plaintiff and inmate

18    witnesses say yes); (2) whether or not defendant answered with a threat to report misconduct; and

19    (3) whether or not defendant filed the May 17 Report because of plaintiff's disputed threat

20    (defendant denies both plaintiff's grievance threat and such motivation).  Both parties initiated

21    their respective filings essentially simultaneously and apparently without knowledge of the

22    other's actions.  Defendant declares that he made the May 17 Report because of plaintiff's

23    conduct, and that he would have done so regardless of any threat to file a grievance, which threat

24    he and Bauer deny having heard.  ECF No. 24-12 at 4-5 ¶ 13.  However, lack of a causal link

25    cannot be determined as a matter of law because plaintiff and his witnesses testify that defendant

26    explicitly stated the May 17 Report was a consequence of plaintiff's grievance threat.

27         As to the fourth element of plaintiff's retaliation claim, chilling effect is assessed

28    according to an objective standard.  *Cohen v. Summervold*, 276 F. App'x 642, 643 (9th Cir. 2008)

1   (the relevant question is not whether the prisoner continued to file grievances despite alleged

2   retaliation).  Defendant again relies on his argument that the May 17 Report was classified as a

3   counseling-only chrono which did not require further action against plaintiff and which is not

4   given any particular weight in parole board regulations.  Plaintiff counters that the parole board

5   advised him to avoid acquiring both 115 rules violation reports and 128 counseling-only chronos,

6   and indeed this advice is confirmed in the parole board's written recommendations after

7   plaintiff's 2020 parole hearing.  ECF No. 25-2 at 4.

8          The Court cannot say as a matter of law whether "a reasonable person would not have

9   been chilled" by defendant's writing of the May 17 Report.  *Garcia v. Healy*, No. 16-cv-05871

10  NC (PR), 2018 WL 1471922, at *6 (N.D. Cal. Mar. 26, 2018) (denying summary judgment).

11  Equally, the court cannot say as a matter of law whether the subsequent classification of the May

12  17 Report as a 128 counseling-only chrono would or would not have chilled a reasonable person

13  from exercising his First Amendment rights.  *See Jones v. Williams*, 791 F.3d 1023 (9th Cir.

14  2015) (a sanction that deprived prisoner of points toward program incentives is adequate to show

15  chilling effect).  Drawing all reasonable inferences in favor of the non-moving party, defendant

16  has not shown that a reasonable person would not have been chilled, nor has plaintiff shown a

17  reasonable person would have been chilled.  It is not possible to grant summary judgment to

18  either party based on this element.

19         As to the fifth element of a retaliation claim, plaintiff bears the burden of proving the

20  absence of a legitimate correctional goal for the adverse action of which he complains.  *Johnson*

21  *v. Ryan*, 55 F.4th 1167, 1202 (9th Cir. 2022); *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003).

22  Plaintiff must show that his protected conduct was "the 'substantial' or 'motivating' factor behind

23  the defendant's conduct."  *Brodheim*, 584 F.3d at 1271.  The official's use of prison procedures

24  must not be pretextual but must be "a *reasonable* advancement of the legitimate penological

25  goal." *Johnson*, 55 F.4th at 1202 (emphasis in original).

26         Defendant declares that plaintiff was loud, disrespectful, and hostile during their

27  interaction on May 17.  Bauer also declares that plaintiff was angry, argumentative, and

28  defensive.  Although plaintiff characterizes his behavior as polite and respectful, he does admit

1    confrontational language such as asking why defendant "refused" to open his door and

2    demanding respect because he had been "down a long time."  Defendant had observed "that other

3    inmates within the housing unit had halted their activities to watch Green's disrespectful and

4    hostile conduct," ECF No. 24-12 at 4 ¶ 10, and indeed all of the inmate witnesses have confirmed

5    that the May 17 interaction drew their attention from their various positions around the housing

6    unit.  Fletcher and Howard both testify that plaintiff and defendant were both angry, and Motley

7    describes an exchange of words.  Defendant declares he issued the May 17 Report to discourage

8    further hostile conduct and similar aggressive behavior by other inmates who witnessed plaintiff's

9    conduct.  Plaintiff has not shown a genuine issue as to his own confrontational stance, or as to

10   whether deescalating and discouraging hostile and aggressive behavior is a legitimate correctional

11   goal.

12         But plaintiff, Howard, Spivey, and Motley testify that defendant stated he would write the

13   May 17 Report as a consequence of plaintiff's grievance threat.  *See* ECF No. 1 at 6; ECF No. 24-

14   2 at 72, 78 (plaintiff); ECF No. 24-4 at 48 (Howard); ECF No. 25-2 at 26 (Tr.38 ll.13-14)

15   (Spivey); *id*. at 60 (Tr.36 l.20) (Motley).   Plaintiff asserts that he told defendant he intended to

16   file a grievance and defendant replied "well then I'll write you a 115 and keep you in prison."

17   ECF No. 24-11 at 3.  Although this account is disputed, both plaintiff and defendant are

18   percipient witnesses as to what was said, and their conflicting accounts cannot be resolved on

19   summary judgment.  Likewise, it is disputed whether defendant said to plaintiff "I know [] any

20   115 or 128 will ruin your chance for parole, so if you want to play that game, I'll write you

21   another 115 again today.'"  (ECF No. 24-2 at 89 ll.10-14; *see also id*. at 92 ll.18-22; *id*. at 94 ll.1-

22   2).  If a jury credits plaintiff's version and finds that the defendant made those statements in

23   response to plaintiff expressing his intent to file a grievance, the jury could reasonably conclude

24   that defendant's subsequent, non-retaliatory explanation for the report is pretextual and that the

25   real motivation for the violation report was to chill or dissuade plaintiff from submitting any

26   further grievances.  Thus, at a minimum, a trier of fact could conclude that defendant's objective

27   was retaliation and discouragement of grievances rather than the furtherance of a legitimate

28   penological goal.  The conflicting accounts of what occurred from percipient witnesses

1    demonstrates a genuine issue of material fact which precludes summary judgment.

2    <u>Qualified Immunity</u>

3       Defendant argues that he is entitled to qualified immunity as to plaintiff's retaliation

4    claim.  Qualified immunity protects government officials from civil liability where "their conduct

5    does not violate clearly established statutory or constitutional rights of which a reasonable person

6    would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotations omitted).  A

7    defendant is entitled to qualified immunity "unless a plaintiff pleads facts showing (1) that the

8    official violated a statutory or constitutional right, and (2) that the right was "clearly established"

9    at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2010).  "Qualified

10   immunity gives government officials breathing room to make reasonable but mistaken judgments

11   about open legal questions."  *Id*. at 743.

12      Showing that the unlawfulness of the conduct was "clearly established" requires a

13   showing that "at the time of the officer's conduct, the law was sufficiently clear that every

14   reasonable official would understand that what he is doing is unlawful."  *Id*. (citation and internal

15   quotation marks omitted); *see also Kisela v. Hughes*, 540 U.S. 100, 105 (2018) (per curiam) ("An

16   officer 'cannot be said to have violated a clearly established right unless the right's contours were

17   sufficiently definite that any reasonable official in the defendant's shoes would have understood

18   that he was violating it.'" (citation omitted)).  "While there does not have to be 'a case directly on

19   point,' existing precedent must place the lawfulness of the [conduct] 'beyond debate.'"

20   *Villanueva v. California*, 986 F.3d 1158, 1165 (9th Cir. 2021) (alteration in original) (quoting

21   *Wesby v. District of Columbia*, 583 U.S. 48, 64 (2018)).

22      The Supreme Court has warned courts not to define clearly established law "at too high a

23   level of generality."  *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam); *Kisela*, 540

24   U.S. at 104.  "[T]he farther afield existing precedent lies from the case under review, the more

25   likely it will be that the officials' acts will fall within that vast zone of conduct that is perhaps

26   regrettable but is at least arguably constitutional."  *Hamby v. Hammond*, 821 F.3d 1085, 1095

27   (9th Cir. 2016).  But "officials can still be on notice that their conduct violated established law

28   even in novel factual circumstances."  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (explaining that

1    "a general constitutional rule already identified in the decisional law may apply with obvious

2    clarity to the specific conduct in question, even though 'the very action in question has [not]

3    previously been held unlawful'") (alteration in original) (quoting *United States v. Lanier*, 520

4    U.S. 259, 271 (1997)).  Whether such a clearly established right exists is "a question of law" for

5    the court to decide.  *Morales v. Fry*, 873 F.3d 817, 819 (9th Cir. 2017)).

6        Defendant's qualified immunity argument once again turns on the ultimate question of

7    whether he acted out of retaliation in filing the May 17 report or instead acted for a legitimate

8    penological goal.  It has long been established "that correctional officers violate the First

9    Amendment by retaliating against prisoners for exercising the First Amendment right to file

10   prison grievances."  *Sawyer v. MacDonald*, 768 F. App'x 669, 672 (9th Cir. 2019).  The doctrine

11   of qualified immunity does not shield a claim based on a retaliatory 115 rules violation report,

12   "which can lead to a variety of punishments, [and] is without question an adverse action."  *Nelson*

13   *v. Scribner*, No. 1:03CV5796-OWW-LJO, 2005 WL 1367061m at *4 (E.D. Cal. May 21, 2005).

14   As noted above, the case law is unclear as to whether a 128 counseling-only chrono is sufficiently

15   adverse to be deemed retaliatory.  *O'Brien*, 2023 WL 199238, at *11 (comparing cases); *Taylor*,

16   2025 WL 1411550 at *8-9 (counseling chrono is not an adverse action); *see also Bird v.*

17   *Dzurenda*, 131 F.4th 787, 792 (9th Cir. 2025) ("because neither the Supreme Court nor the Ninth

18   Circuit has ever held that retaliation for complaints against other prisoners violates the First

19   Amendment [], it is not clearly established law").

20       Defendant's assertion of qualified immunity turns on disputed issues of fact too

21   intertwined with the merits to be resolved on summary judgment.  It is well established issuing a

22   rules violation report in retaliation for an inmate's threat to file a grievance would violate the First

23   Amendment.  If the record clearly showed defendant had merely threatened plaintiff with a 128

24   counseling-only chrono (arguably not an adverse action[14]), or that he submitted the report for

25   classification without comment, defendant's claim to qualified immunity would be stronger.  But

26

27       [14] However, as noted above, the parole board has cautioned plaintiff that either a 115 or a
     128 rules violation report would adversely impact his parole.  Likewise, defendant also allegedly
28   told plaintiff that either report would ruin his chances for parole.

1   there is evidence that defendant intended to make a 115 rules violation report (clearly an adverse

2   action).  The remaining factual issues are defendant's motivation, and pretext -- i.e., whether

3   defendant made the May 17 Report "because of" plaintiff's disrespectful conduct or "because of"

4   plaintiff's grievance threat, or both.  If this factual issue is resolved in plaintiff's favor, then

5   defendant is not entitled to qualified immunity, even though other prison officials subsequently

6   classified the report as a 128 counseling-only chrono.  For this reason, the court cannot grant

7   summary judgment for defendant on the basis of qualified immunity.

8                           Fourteenth Amendment Due Process Claim

9          The due process clause of the Fourteenth Amendment prohibits state action that deprives a

10  person of life, liberty, or property without due process of law.  A litigant alleging a due process

11  violation must first demonstrate that he was deprived of a liberty or property interest protected by

12  the Due Process Clause and then show that the procedures attendant upon the deprivation were

13  not constitutionally sufficient.  *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 459-

14  460 (1989).

15         "There is no constitutional or inherent right of a convicted person to be conditionally

16  released before the expiration of a valid sentence."  *Greenholtz v. Inmates of Neb. Penal*, 442

17  U.S. 1, 7 (1979).  State statutes, however, may create liberty interests in parole release entitled to

18  protection under the Due Process Clause.  *Id*. at 12; *see also Bd. of Pardons v. Allen*, 482 U.S.

19  369, 371 (1987).  For example, the Ninth Circuit has held that California's statutory provisions

20  governing parole may create such a liberty interest insofar as a prisoner may earn good time

21  credits toward time served, but much less so regarding discretionary decisions whether to grant

22  parole which need only be supported by "some evidence" with an "extremely deferential"

23  standard of review.  *See Hayward v. Marshall*, 603 F.3d 546, 555-563 (9th Cir. 2010) (*en banc*),

24  *disapproved on other grounds*, *Swarthout v. Cooke*, 562 U.S. 216 (2011).

25         Plaintiff's Fourteenth Amendment claim is based on the effect of the May 17 Report on

26  his parole.  ECF No. 24-2 at 149 ll.10-17.  He contends that it undermines evidence of his

27  rehabilitation and positive programming, regardless of its classification as a counseling-only

28  chrono.  ECF No. 16 at 2-3, 9; ECF No. 24-2 at 149 ll.24-25; ECF No. 25 at 2-3.  Plaintiff points

21

1    out that in 2020 the parole board recommended that plaintiff should have "No more 115's or

2    128A's," and a counseling-only chrono is a "128A" with the same effect on plaintiff's bid for

3    parole as a "115," and is perhaps even worse because plaintiff was unable to challenge the

4    counseling-only chrono in a due process disciplinary hearing. ECF No. 25 at 2-5. He argues that

5    the parole board's reliance on the counseling-only chrono is not speculative because of the parole

6    board's recommendation.

7         Defendant argues that a 128 counseling-only chrono is not itself an atypical, significant

8    deprivation that creates a liberty interest, that it does not inevitably affect the duration of

9    plaintiff's sentence, and that plaintiff received all the due process to which he was entitled. ECF

10   No. 24 at 25-28. Defendant specifically cites "myriad other factors a parole board may consider

11   in reaching its decision on Green's parole suitability" including a December 2021 rules violation

12   report for fighting which will be on the record for plaintiff's 2025 parole hearing and which "was

13   classified as serious and resulted in Green receiving disciplinary penalties." *Id*. at 27.

14        Defendant's argument prevails because plaintiff does not have a liberty interest in

15   avoiding all reports that might possibly affect his chance of parole. "[T]he possibility of denial of

16   parole at some later date does not amount to the denial of a liberty interest." *Burnsworth v.*

17   *Gunderson*, 179 F.3d 771, 774 n.3 (9th Cir. 1999); *see also Whitall v. Gutierrez*, No. 20-cv-

18   00910-CRB, 2024 WL 4505461, at *5 (N.D. Cal. Oct. 15, 2024) (*Burnsworth* remains circuit

19   precedent and has not been overruled or abrogated by *Sandin v. Conner*, 515 U.S. 472 (1995) or

20   by *Swarthout*).

21        The fact that plaintiff has now been denied parole at his August 26, 2025 hearing, and the

22   extent to which the May 17 Report may have contributed to the denial, while perhaps relevant to

23   the First Amendment retaliation claim, "is simply too attenuated to invoke the Due Process

24   Clauses's procedural guarantees." *Sandin*, 515 U.S. at 487; *see also Ontiveros v. Kernan*, 379 F.

25   App'x 678, 680 (9th Cir. 2010) (affirming summary judgment on a claim that informational

26   chronos are likely to influence parole decisions, because this does not amount to denial of a

27   liberty interest).[15] Summary judgment must be entered for defendant on plaintiff's Fourteenth

28   ───────────────────────

          [15] Following his August 26, 2025 parole hearing, plaintiff submitted a declaration

1    Amendment retaliation claim.[16]

2    <u>Defendant's Motion to Strike Plaintiff's Unauthorized Sur-reply</u>

3    Defendant has moved to strike plaintiff's unauthorized sur-reply. ECF No. 29 (moving to

4    strike ECF No. 27); ECF No. 30 (opposition). Local Rule 230(l), governing prisoner actions,

5    does not provide for the filing of a sur-reply, and Local Rule 230(m) provides that "[a]fter a reply

6    is filed, no additional memoranda, papers, or other materials may be filed" except for two

7    exceptions, neither of which apply here. Accordingly, the court grants the motion to strike the

8    unauthorized sur-reply.[17]

9    <u>Order and Recommendations</u>

10   Accordingly, for all the foregoing reasons:

11   1.    Plaintiff's request for judicial notice is GRANTED IN PART and DENIED IN

12        PART. The court takes judicial notice of the filing of earlier lawsuits. The request

13        for judicial notice of adjudicative fact of a history of falsifying rules violations,

14        ECF No. 25-2, is DENIED.

15   _____

16   asserting that the May 17 Report "was a contributing factor" in the parole board's denial. ECF
     No. 33 at 2; *see also* ECF No. 32 (plaintiff's declaration that the May 17 Report was included in

17   the risk assessment prepared for the parole board). But the precise extent to which the May 17
     Report and its classification as a 128 counseling-only chrono may have factored into the parole

18   board's decision is inherently speculative, not least because plaintiff's record also contained at
     least one "serious" disciplinary report (for fighting), as well as "many laudatory chronos" about

19   his achievements. *See* ECF No. 24 at 27; ECF No. 16 at 7.
         *Sandin*, *Burnsworth*, and *Ontiveros* all hold that possible consequences in parole

20   proceedings are too attenuated to give rise to a protected liberty interest and a due process claim.
     This legal principle is not affected by the extent to which a particular report may have influenced

21   a parole board's decision (likely unknowable in many instances).

22       [16] Because it is recommending summary judgment in favor of defendant on the substance
     of plaintiff's Fourteenth Amendment claim, the court does not reach defendant's qualified

23   immunity argument as to that claim.

24       [17] The court notes that the case plaintiff cites in his unauthorized sur-reply would not alter
     the court's substantive analysis. ECF No. 27 at 1 (citing *Vallery v. Botkin*, No. 2:20-CV-0767-

25   TLN-KJN-P, 2020 U.S. Dist. LEXIS 238902, 2020 WL 7425343 (E.D. Cal. Dec. 18, 2020)). The
     court has noted *supra* that the question of whether a counseling chrono is an adverse action is not

26   a settled proposition, and the *Vallery* case is one of several cases cited in *O'Brien*, 2023 WL
     199238, at *11, as being on one side of the proposition.

27       *Vallery* would not help plaintiff's argument, because it concluded that a "Counseling Only
     Rules Violation Report" is informational only and not an adverse action, and the court therefore

28   recommended both dismissal of plaintiff's retaliation claim and a grant of qualified immunity,
     2020 WL 7425343, at *5, 7, 8.

        2.      Defendant's motion to strike plaintiff's unauthorized sur-reply is GRANTED.

              ECF No. 29 (moving to strike ECF No. 27).

For all the reasons set forth herein, it is RECOMMENDED that:

        1.      Plaintiff's motion for summary judgment, ECF No. 16, be DENIED; and

        2.      Defendant's motion for summary judgment, ECF No. 24, be GRANTED IN PART as to plaintiff's Fourteenth Amendment Due Process claim and DENIED IN PART as to plaintiff's First Amendment retaliation claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **seven** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 95 F.2d 1153 (9th Cir. 1991).

Dated: September 17, 2025

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE